[No. 51771–1.   En Banc.   August 14, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. RANDY DEAN ARMSTRONG, *Appellant.*

*Stephen M. Warning,* for appellant.

*Henry R. Dunn, Prosecuting Attorney,* and *Bert Paul, Deputy,* for respondent.

*David Boerner,* amicus curiae.

DURHAM, J.—Randy Armstrong challenges his 5-year sentence for second degree assault. Under the Sentencing Reform Act of 1981, the presumptive sentence range for this crime is 12 to 14 months. Armstrong contends that the trial court did not supply reasons that justified imposition of a sentence outside the presumptive range, and that the sentence given is clearly excessive. We affirm the sentence of the trial court.

Armstrong had been looking after a 10-month-old baby. When the baby began to cry and would not stop, Armstrong lost control. He threw boiling coffee on the infant. The baby continued to cry and Armstrong responded by plunging the baby's foot in the hot coffee. Armstrong then drove the baby to the hospital where he was treated for first and second degree burns on his face and feet. Armstrong later pleaded guilty to a charge of second degree

assault.

The presumptive sentence range for this crime is determined by combining the seriousness level of second degree assault with Armstrong's criminal history. RCW 9.94A.320. Armstrong has a criminal history score of "2" for two prior second degree burglary convictions. RCW 9.94A.330, former 9.94A.360(5). Thus, his presumptive sentence range is 12 to 14 months. The statutory maximum sentence for second degree assault is 10 years. RCW 9A.36.020(2), 9A.20.021-(1)(b). Although the prosecutor asked for a sentence within the presumptive range, the trial judge sentenced Armstrong to 5 years.

A sentencing judge may impose a term outside the presumptive range if he provides "substantial and compelling reasons", set forth in written findings of fact and conclusions of law. RCW 9.94A.120(2), (3). The trial court here listed four reasons to justify Armstrong's exceptional sentence: (1) the victim of the assault was a totally defenseless 10–month–old child; (2) the child was injured twice, once when Armstrong threw boiling coffee on him, and a second time when Armstrong plunged the child's foot in the coffee; (3) the injuries were very serious first and second degree burns to the child's body; and (4) the incident could have been avoided had Armstrong simply walked away from the crying child.

RCW 9.94A.210(4) provides the applicable standard of review:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense . . .

Armstrong agrees that the reasons given by the trial judge are supported by the record. Our only task is to determine if those reasons justify a sentence outside the presumptive sentence range.

We hold that the first two reasons provided by

the trial court justify imposing an exceptional sentence. The first reason given, that the victim was a totally defenseless 10–month–old child, is specifically listed as an "aggravating circumstance" under former RCW 9.94A-.390(2):

> The defendant knew or should have known that the victim of the offense was *particularly vulnerable or incapable of resistance due to extreme youth,* advanced age, disability, or ill health.

(Italics ours.) The second reason given, that Armstrong inflicted multiple injuries when he both threw boiling coffee on the child and later plunged the child's foot in the coffee, is not among the aggravating circumstances listed in RCW 9.94A.390. That list, however, is illustrative rather than exclusive. *See State v. Nordby,* 106 Wn.2d 514, 516, 723 P.2d 1117 (1986). We note that former RCW 9.94A-.390(3)(a) does list "multiple . . . incidents per victim" as an aggravating circumstance in the context of "major economic offenses". Likewise, the infliction of multiple injuries in the course of a second degree assault is a factor upon which a court may rely to justify an exceptional sentence.

Although the above two reasons alone are sufficient to impose a sentence outside the presumptive range, we note that the third and fourth reasons provided by the trial court are insufficient. The fact that Armstrong inflicted serious first and second degree burns upon the baby merely brings Armstrong's crime within the definition of second degree assault. RCW 9A.36.020 provides in pertinent part:

> (1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:
>
> . . .
>
> (b) Shall knowingly inflict *grievous bodily harm* upon another with or without a weapon; . . .

(Italics ours.) In *State v. Salinas,* 87 Wn.2d 112, 121, 549 P.2d 712 (1976), the court, in defining "grievous bodily harm", stated, "By 'grievous' is meant atrocious, aggravating, harmful, painful, hard to bear, serious in nature." This

definition encompasses first and second degree burns. Hence, the nature of the injuries inflicted were already accounted for in determining the presumptive sentence range for second degree assault; they cannot be counted a second time to justify an exceptional sentence. *See also Nordby,* at 518; *State v. Baker,* 40 Wn. App. 845, 700 P.2d 1198 (1985). Finally, the fourth reason given by the trial court, that Armstrong could have avoided the incident by simply walking away, we dismiss as inadequate because this holds true for any crime.

Armstrong contends that the aggravating circumstances listed by the trial court do not justify an exceptional sentence because the trial court failed to consider them in conjunction with the following alleged mitigating circumstances: (1) Armstrong had no prior crimes of violence, (2) Armstrong took the child to the hospital after the burns, (3) Armstrong did not commit a premeditated assault, and (4) Armstrong confessed to the police. The first, second, and third factors listed here are not valid mitigating circumstances. The first factor deals with Armstrong's criminal history and hence has already been accounted for in determining the presumptive sentencing range. *State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821 (1985). The second and third factors simply show the lack of an aggravating circumstance, since if Armstrong had committed a premeditated second degree assault on a 10–month–old baby, or had left the child to suffer, he would have "manifested deliberate cruelty to the victim." Former RCW 9.94A.390(1), Aggravating Circumstances. The lack of an aggravating circumstance does not create a mitigating circumstance. Only the fourth factor arguably qualifies as a mitigating circumstance but in any event, it clearly is outweighed by the fact that Armstrong committed second degree assault by inflicting multiple injuries on a defenseless 10–month–old child.

Armstrong finally contends that even if an exceptional sentence is justified in this case, his 5–year prison term is "clearly excessive". RCW 9.94A.210(4)(b). The

standard of review which we use to evaluate this claim is the abuse of discretion. Thus, we will reverse the sentence as "clearly excessive" only if the trial court's action was one that no reasonable person would have taken. *State v. Oxborrow,* 106 Wn.2d 525, 531, 723 P.2d 1123 (1986). The trial court here considered that the crime committed was not a routine second degree assault but rather a flagrant act of child abuse requiring severe punishment.[1] We cannot say that the trial court abused its discretion in imposing a 5-year sentence.

The sentence of the trial court is affirmed.

DOLLIVER, C.J., and BRACHTENBACH, ANDERSEN, and CALLOW, JJ., concur.

GOODLOE, J. (dissenting)—I dissent. I am unable to agree with the majority's decision to uphold a 5-year sentence under the Sentencing Reform Act of 1981 for the defendant's conviction of second degree assault. Such a sentence is "clearly excessive" in light of the sentences prescribed by the new sentencing act, and should be reduced accordingly.

Armstrong committed a second degree assault on a 10-month-old baby by throwing hot coffee on the infant and then dunking its feet in the boiling liquid. Such action constituted second degree assault, which requires an assault that causes "grievous bodily harm". RCW 9A.36.020(1)(b). The trial court quite properly elected to go outside the presumptive range, because the judge found, pursuant to RCW 9.94A.120(2), that "considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." The court listed these factors in its findings of fact pursuant to RCW 9.94A-.120(3).

---

[1]The dissent argues that Armstrong's sentence is "clearly excessive" because it is not the "worst possible" second degree assault. (See dissent, at 555.) However, the trial court did not sentence Armstrong to 10 years, the statutory maximum supposedly reserved for the worst possible cases. Instead, the trial court sentenced Armstrong to 5 years—*one-half* the statutory maximum.

However, the analysis of the judge's sentencing decision should not end after an appellate court decides that an exceptional sentence was justified. The trial court must give the defendant a determinate sentence, RCW 9.94A.120(3), and this sentence is subject to meaningful appellate review. RCW 9.94A.210(4)(b) provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find ⹁ . . . (b) that the sentence imposed was clearly excessive or clearly too lenient.

The statute does not expressly state what is meant by "clearly excessive".

According to the majority's analysis, appellate courts would use an abuse of discretion standard of review. This standard would ensure that rarely, if ever, would an appellate court be able to overturn a sentence imposed by a trial court. Only one appeal in the history of this state has ever successfully overturned a sentence because the trial court abused its discretion. *State v. Potts,* 1 Wn. App. 614, 464 P.2d 742 (1969). Thus, meaningful appellate review which, pursuant to RCW 9.94A.210(6), "would provide guidance to sentencing judges and others in implementing this chapter and in developing a common law of sentencing within the state" would simply not exist under the majority's interpretation.

Furthermore, the purpose of the sentencing reform act, codified in the first section, "is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences". RCW 9.94A.010. While the presumptive range matrix offers quite a structured sentencing pattern for presumptive sentences, a very broad discretionary standard for review of exceptional sentences would defeat the purpose of the act once departure was justified. The sentencing of criminals outside the presumptive range would have no structure except that the sentence could not exceed the statutory maximums in RCW 9A.20.020.

Moreover, the majority's decision would defeat the first listed purpose of the sentencing reform act: "[T]hat the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history". RCW 9.94A.010(1). When the offense falls within the presumptive sentence range, then proportional punishment is guaranteed, as the sentencing matrix dictates within a few months, the total period of confinement the defendant will receive. This is not true when the offense justifies an exceptional sentence. What is a proper "proportional" sentence is difficult, if not impossible, to decide in the abstract. Guidance and structure must be given if the trial court can exercise whatever discretion it has in a meaningful way. An "abuse of discretion" standard would simply not provide such a structure, and sentences for similar crimes could vary widely owing to different trial courts' perceptions of what punishment is "proper" for a given offense.

To illustrate this point, without reference to other child assault cases, or other sentences for different offenses, it would be impossible to make a meaningful decision on what sentence to give Armstrong in this case. Even if we use the philosophy of the sentencing reform act and sentence Armstrong to punish him for his actions, no sentence—or even sentence range—becomes self-evident. Some point of comparison must be used. Therefore, it would be instructive to look at what crime the Legislature intended should give Armstrong 5 years in prison. For an offender score of 2, Armstrong would have had to commit a crime between class 9 (first degree robbery, first degree manslaughter, first degree statutory rape) and class 10 (first degree kidnapping, first degree rape) to justify 5 years. I find it virtually impossible to equate the actions of Armstrong with an individual who, with deliberate calculation, inflicts serious bodily injury when committing forcible rape.

This example shows that some definite structure must be given in exceptional sentences, and that Armstrong's sentence of 5 years is in fact "clearly excessive", when compared with the other sentences given in the sentencing

reform act. Merely because this court feels that the presumptive sentences are too lenient does not justify the imposition of harsher sentences. Deciding sentence length is a legislative and not a judicial function. This court stated in relation to the Juvenile Justice Act of 1977:

> A belief on the part of the judiciary that sentencing possibilities are inadequate goes to the wisdom of the dispositional standards and cannot be enough to overcome the legislatively prescribed range of punishment.

*State v. Bryan,* 93 Wn.2d 177, 181, 606 P.2d 1228 (1980). If the Legislature has erred in setting too lenient sentences, then it is for the Legislature, and not the courts, to rectify the mistake.

The solution to the problem of what sort of sentence to give an individual such as Armstrong lies in this court's creating certain rules on what sentences aggravated crimes should presumptively receive. The trial court could have sentenced Armstrong to between 14 months and 10 years once it found aggravating circumstances, so clearly some standards are necessary. I would propose the following guidelines.

In order to receive the maximum sentence allowable for a crime under RCW 9A.20.021, a defendant must commit the worst possible offense which still would fall within the statutory limits of the particular crime in question. Here, Armstrong would have had to commit a second degree assault so heinous that this court could not contemplate a different assault which would be more severe. I do not believe this to be the case. Such a case only arises in very unusual circumstances, such as our decision in *State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986), in which a defendant charged with theft of an amount of over $1,500 actually stole millions of dollars from hundreds of persons.

Once the trial court has determined that the legislatively imposed maximum sentence does not apply, then the trial court should determine, exercising its sound discretion, how severe the aggravating factors were which justified an exceptional sentence, and the presence of any mitigating

factors. Typically, two types of cases will result. There will be cases in which aggravating factors exist which do justify an exceptional sentence, but the crime does not call for a huge disparity between the presumptive range and the actual sentence imposed. Other cases will exist which, because of their outrageous and heinous nature, cry out for a sentence closer to the statutory maximum. No firm rule can exist to distinguish these types of offenses, but the distinction should be based on the nature of the offense committed versus the typical offense contemplated by the particular statute. As the common law develops regarding sentencing, the earlier decisions of trial courts, reviewed meaningfully by appellate courts, will also serve as a guideline for trial judges.

Cases which fit into this lesser aggravated range merit an exceptional sentence close to the presumptive range and, therefore, should not receive a sentence greater than twice the presumptive maximum. This would achieve proportional punishment based on the seriousness of the offense, would help structure the trial court's discretion, and would still leave the trial court substantial discretion in deciding the proper punishment based on the severity of the offense.[2] Moreover, such a rule would not effectively repeal the sentencing guidelines set down by the Legislature after years of committee research, simply because this or any other court feels that the guidelines proposed were improper.

It seems to me that Armstrong fits into this category. While one cannot help but feel that this crime was truly aggravated because of the defenseless position of the infant, the assault undoubtedly could have been far more severe. Furthermore, Armstrong did care for the infant after the injury and voluntarily turned himself in to the police. These factors convince me that the trial court gave Arm-

---

[2] I recognize this rule should not apply to sentences of less than 1 year, because doubling such a short sentence may not achieve the aim of sentencing proportionate to the offense.

strong a clearly excessive sentence of nearly five times the presumptive maximum, nearly the same sentence he would have received had Armstrong committed first degree rape. I would hold that this type of assault is one that fits into a lesser aggravated range, and that the trial court should resentence Armstrong to a maximum sentence of 28 months, twice the presumptive maximum. To do otherwise would defeat the proportional punishment purpose of the new sentencing reform act.

UTTER, DORE, and PEARSON, JJ., concur with GOODLOE, J.