[No. 12471-1-III.    Division Three.    June 21, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. BILLY WAYNE WORL, *Appellant*.

*Michael F. Keyes,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

SWEENEY, A.C.J. — Billy Wayne Worl, Jr., was convicted by a jury of attempted second degree murder and malicious harassment. The trial court imposed a standard range sentence for the attempted second degree murder. It imposed an exceptional sentence for the malicious harassment offense, citing four aggravating factors including future dangerousness.[1] The court ordered that the sentences run consecutively. The malicious harassment conviction and the exceptional sentence were affirmed by this court in *State v. Worl,* 58 Wn. App. 443, 794 P.2d 31 (1990). The Washington Supreme Court rejected the use of future dangerousness as an aggravating factor and remanded for resentencing. *State v. Barnes,* 117 Wn.2d 701, 818 P.2d 1088 (1991). On remand, the sentencing court again imposed an exceptional sentence for the malicious harassment conviction and ordered the sentences to run consecutively. In this second appeal, Mr. Worl contends the conviction of malicious harassment violated his First Amendment right to free speech, and the exceptional sentence (a) violates the Fifth Amendment protection against double jeopardy; (b) is not supported by the record; (c) is not justified in law; (d) is excessive; (e) was an abuse of discretion; and (f) was improperly computed. We affirm the malicious harassment conviction but remand for resentencing.

## I

### FACTS AND PROCEDURAL POSTURE

As set forth in *Worl,* at 445-46, the facts are as follows. On July 30, 1988, at approximately 2 a.m., Mr. Worl and Tim

---

[1]Mr. Worl was sentenced within the standard range for the attempted second degree murder conviction. That sentence is not the subject of this appeal.

Carver were panhandling at a Spokane Safeway parking lot. Raymond Hill, an African American, was sitting in his car. Mr. Worl approached Mr. Hill and referred to him as a "Blood". Mr. Hill asked Mr. Worl if he was one too. Mr. Worl responded, "No, I am not and you mother fuckers should all go back to Africa where you belong". Both men thought the other had a gun. Mr. Worl kicked the side of Mr. Hill's car and told him to "[g]et out here". Mr. Hill reached for a conduit tube on the floor of his car and exited his vehicle. Mr. Worl rushed him and the tube fell from Mr. Hill's hand. Mr. Carver hit Mr. Hill from behind. Mr. Worl pulled a knife and began "slashing" Mr. Hill who threw Mr. Carver to the ground, stumbled about 10 feet and fell. Mr. Hill saw Mr. Worl and Mr. Carver coming at him. According to Mr. Hill, Mr. Carver jumped him and held him down while Mr. Worl continued slashing him. Mr. Hill called for help and kicked at Mr. Worl to protect himself.

Several witnesses approached; Mr. Worl and Mr. Carver ran away. Either Mr. Worl or Mr. Carver stopped to pick up Mr. Hill's hat and conduit tube. One of the witnesses took down Mr. Worl's license plate number. Both Mr. Worl and Mr. Carver were arrested later that evening at Mr. Carver's home. Mr. Hill suffered five lacerations, four of which required 20 or more stitches to repair.

Mr. Worl was charged with attempted first degree murder, first degree assault and malicious harassment. A jury convicted him of attempted second degree murder and malicious harassment. The standard range sentence for the attempted second degree murder was 108 to 144 months. The sentencing court imposed a sentence of 120 months. The standard range sentence for the malicious harassment conviction was 12 to 14 months. The court imposed a 60-month sentence and ordered the sentences to run consecutively. Four aggravating factors were relied on for the imposition of the exceptional sentence: (1) multiple incidents or injuries; (2) deliberate cruelty; (3) future dangerousness; and (4) the atypicality of the conduct.

This court affirmed the exceptional sentence in *State v. Worl, supra*. The Supreme Court accepted review on the limited issue of whether the factor of future dangerousness

could be applied in a nonsexual offense case. *State v. Barnes, supra.* Determining that future dangerousness may not be considered, it remanded the matter for resentencing because the record suggested that the trial court relied primarily upon future dangerousness in imposing the exceptional sentence. *Barnes,* at 713.

On April 7, 1992, a resentencing hearing was held before the original sentencing judge. The court found there was deliberate cruelty and that Mr. Hill had suffered multiple injuries. The court stated: "I want to make it clear that this Court's primary motivating factor is multiple injuries and deliberate cruelty either of which standing alone, in this Court's judgment, are sufficient upon which to base an exceptional sentence." Mr. Worl appeals.

## II

### ISSUES

Mr. Worl's second appeal raises four issues:

1. Whether the malicious harassment statute violates his First Amendment right to free speech.

2. Whether the crimes of attempted second degree murder and malicious harassment merge or constitute the same crime for purposes of the double jeopardy clause of the Fifth Amendment.

3. Whether the offense of malicious harassment is a substantive crime or a sentence enhancer.

4. Whether the court erred in imposing an exceptional sentence.

We address each in order.

## III

### DISCUSSION

#### A

#### First Amendment Rights

Preliminarily, we address the State's contention that Mr. Worl's First Amendment argument should not be considered because it was not raised in the trial court or in the first appeal. *State v. Sauve,* 100 Wn.2d 84, 666 P.2d 894 (1983).

■ In determining whether claims of constitutional error should be reviewed for the first time on appeal, our Supreme Court has set out a 2-step process:

First, the appellate court should satisfy itself that the error is truly of constitutional magnitude . . .. If the asserted error is not a constitutional error, the court may refuse review on that ground. If the claim is constitutional, then the court should examine the effect the error had on the defendant's trial . . ..

*State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988).

We review Mr. Worl's assignment of error because it implicates the right of free speech and is therefore clearly of constitutional magnitude. And if we accept his argument, the malicious harassment conviction must be reversed because the statute is unconstitutional. *Chapman v. California*, 386 U.S. 18, 21-22, 17 L. Ed. 2d 705, 87 S. Ct. 824, 827, 24 A.L.R.3d 1065 (1967).

Mr. Worl's argument is that insofar as the malicious harassment statute punishes him for speech and thought it is violative of the First Amendment and therefore unconstitutional. He relies on *R.A.V. v. St. Paul*, 505 U.S. 377, 120 L. Ed. 2d 305, 112 S. Ct. 2538 (1992). While conceding that those actions which produced injury are not constitutionally protected, he maintains that he is being unconstitutionally punished for his reason or motive in causing the injury. We disagree.

■ *Wisconsin v. Mitchell*, 506 U.S. 1033, 124 L. Ed. 2d 436, 113 S. Ct. 2194 (1993) rejects the construction of *R.A.V.* urged by Mr. Worl. Selection of a victim on the basis of a particular characteristic is behavior, not speech.

The Washington Supreme Court accepted the rationale of *Mitchell* in *State v. Halstien*, 122 Wn.2d 109, 123-25, 857 P.2d 270 (1993). There, the defendant challenged the juvenile sexual motivation statute as being unconstitutionally overbroad because it infringed on protected areas of speech, including private plans, speech, and thought. *Halstien*, at 121. Relying on *Mitchell*, the court rejected the challenge to the statute and stated it "does not punish a defendant for having sexual thoughts, but rather punishes the defendant

for acting on those thoughts in a criminal manner." (Italics omitted.) *Halstien*, at 123.

Recently, in *State v. Talley*, 122 Wn.2d 192, 858 P.2d 217 (1993), our Supreme Court addressed a similar challenge to the malicious harassment statute. The defendants in *Talley* were charged under Washington's malicious harassment statute, former RCW 9A.36.080. All argued that the statute was a content-based speech regulation and thus an unconstitutional restriction of First Amendment rights.

The court in *Talley* concluded that former RCW 9A.36.080(1) proscribed criminal conduct and only incidentally affected speech:

> [T]he statute is aimed at criminal conduct and enhances punishment for that conduct where the defendant chooses his or her victim because of their perceived membership in a protected category. The statute punishes the selection of the victim, not the reason for the selection. It increases punishment where the perpetrator acts on particularly offensive beliefs, not the beliefs themselves. The statute is triggered by victim selection regardless of the actor's motives or beliefs.

*Talley*, at 201.

Both *Talley* and *Mitchell* dispose of Mr. Worl's First Amendment argument.

## B

### Merger — Double Jeopardy

Mr. Worl next argues that the malicious harassment charge merged into the greater offense of attempted second degree murder. His argument is that to sustain the attempted murder conviction, the State convinced the jury he intended to cause Mr. Hill's death and engaged in conduct which was a substantial step toward doing so. For malicious harassment, the jury was convinced that Mr. Worl intended to harass Mr. Hill because he was black and intended to cause him physical injury. Based on this analysis, he argues that factual questions remain because the jury did not resolve the question of when the malicious harassment began and when it ended. We disagree.

■ The jury was required to find the elements of both crimes.[2] It was further instructed to unanimously agree on each element of the crimes in order to convict. This is all that is required. *State v. Clapp*, 67 Wn. App. 263, 270-71, 834 P.2d 1101 (1992), *review denied*, 121 Wn.2d 1020 (1993). The greater offense of attempted murder can be committed without necessarily committing malicious harassment.

Mr. Worl urges that attempt crimes present a unique twist on the merger doctrine requiring adoption of a "modified merger doctrine". The crime of attempted second degree murder is an anticipatory crime which requires only intent and a substantial step. Accordingly, with criminal attempt, there are no defined elements for the lesser crime. He argues that a defendant could theoretically be convicted of each additional charged lesser offense which would violate the principles of the merger doctrine. Because the general merger, in its pure form, cannot apply to cases when the greater offense is an attempt crime, he concludes the malicious harassment conviction must merge into attempted second degree murder under a "modified merger test" — a test refined for anticipatory crimes.

Mr. Worl cites no authority for this position. Moreover, this argument was recently rejected in *State v. Harris*, 121 Wn.2d 317, 849 P.2d 1216 (1993). There the State argued that because all attempt crimes include the element of a "substantial step", a lesser included offense can never be proper when attempt is the greater crime. The court in *Harris* declined the State's invitation to create a different lesser included offense rule when the greater offense is attempt. The court stated that not only was such a holding disfavored because of precedent, but "the jurisprudential and practical concerns that tacitly underlie our adoption and

[2]Attempted murder requires (1) an intent to cause death and (2) a substantial step. RCW 9A.32.030(1)(a); RCW 9A.28.020(1). Malicious harassment requires (1) intent to intimidate or harass and (2) physical injury to the victim or placing the victim in reasonable fear of harm. RCW 9A.36.080(1).

adherence to the *Workman*[3] test are equally persuasive in the case of attempts as in other categories of crimes." *Harris*, at 322.

Mr. Worl's double jeopardy argument was addressed and rejected in *Worl*. There, we concluded that "one may commit attempted second degree murder without committing malicious harassment. The two crimes are separate and may be punished separately." *Worl*, at 450. That portion of our holding in *Worl* was not disturbed by the Supreme Court's holding in *Barnes*. *See Worl*, at 449-50.

Each of the elements of malicious harassment are not necessary elements of the greater offense of attempted murder and therefore the merger doctrine does not apply.

## C
### Sentence Enhancement

Mr. Worl next contends that malicious harassment is not a separate crime but merely enhances the sentence for certain crimes because of victim selection. He relies on language in *Talley*. While the *Talley* case certainly refers to RCW 9A.36.080(1) as an enhancement statute, *see Talley*, at 201, 203-07, 215, and 218, clearly the court does not use the term in the technical sense of a penalty enhancement such as is found in RCW 69.50.435 (school zone enhancement), RCW 9.94A.310(3) (deadly weapon enhancement), or RCW 9.94A.310(4) (crimes committed in a corrections facility).

Rather, the court in *Talley* used the term enhancement in a more generic sense to explain that the Legislature chose to punish malicious harassment more severely than other forms of assault or property crimes. In other words, the punishment for this crime is more enhanced, greater, and

---

[3] In *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978), the court stated the rule that a defendant is entitled to a lesser included offense instruction if each of the elements of the lesser offense is a necessary element of the offense charged and if the evidence supports an inference that the lesser crime was committed. *Workman*, at 447-48. Further, the court adopted the approach of the Model Penal Code of the American Law Institute to the definition of "substantial step". Under *Workman*, the substantial step need not be an overt act as long as it is behavior strongly corroborative of the actor's criminal purpose. *Workman*, at 451-52.

more severe than for other crimes which do not have as an element one of the proscribed perceptions of the victim, *i.e.*, race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap. Further, the focus of *Talley* was the First Amendment challenge, not whether the statute created a substantive crime or added a factor for enhancing a sentence. *Talley*, at 218.

Our reading of RCW 9A.36.080(1) is consistent with RCW 9A.36.078 wherein the 1993 Legislature expressed its interest in protecting state citizens from threats of harm due to bias and bigotry:

> The legislature finds that the state interest in preventing crimes and threats motivated by bigotry and bias goes beyond the state interest in preventing other felonies or misdemeanors such as criminal trespass, malicious mischief, assault, or other crimes that are not motivated by hatred, bigotry, and bias, and that prosecution of those other crimes inadequately protects citizens from crimes and threats motivated by bigotry and bias.

Malicious harassment is a separate crime and is not merely a sentence enhancer.

## D
### Exceptional Sentence

■ The State contends that inasmuch as the sentencing related issues were reviewed in the original appeal they should not be reviewed as part of this second appeal. We disagree. This is a direct appeal following resentencing. Accordingly, the trial court's sentence is again properly before this court for review. *See State v. Collicott*, 118 Wn.2d 649, 654, 827 P.2d 263 (1992); *State v. Hillman*, 66 Wn. App. 770, 778 n.6, 832 P.2d 1369, *review denied*, 120 Wn.2d 1011 (1992). Mr. Worl contends he is being punished three times for the same crime — he was sentenced to 120 months for the attempted second degree murder; he was given an enhanced 60-month sentence for the malicious harassment conviction (standard range 12 to 14 months); and the sentencing court ordered that the two sentences run consecutively.

■ RCW 9.94A.120(2) provides that the sentencing court may depart from the presumptive sentence range if the

offense involves substantial and compelling circumstances. We independently review the legal sufficiency of the sentencing court's reasons as a matter of law. *State v. Hammond*, 121 Wn.2d 787, 794, 854 P.2d 637 (1993); *State v. Sly*, 58 Wn. App. 740, 748, 794 P.2d 1316 (1990).

Here, the sentencing court determined that the attempted second degree murder and the malicious harassment "did not in fact arise out of the same criminal conduct and are separate and distinct crimes". The court held that there were two aggravating factors and circumstances which warranted an exceptional sentence for the malicious harassment:

> Those are the multiple wounds inflicted upon Mr. Hill coupled that with the persistence in the attack upon Mr. Hill. There is evidence, in my judgment, of gratuitous violence. I find, with respect to that conviction, that there was deliberate cruelty . . .
>
>   . . . .
>   . . . Based upon the aggravating factors of multiple injuries and deliberate cruelty, I will impose an exceptional sentence with respect to the conviction of Malicious Harassment.

The problem, however, is that the court used factors to enhance the malicious harassment sentence which would support the crime of attempted second degree murder, a charge for which Mr. Worl had already been punished. A sentencing court may not base an exceptional sentence on facts which establish additional crimes. RCW 9.94A.370(2); *Sly*, at 750. RCW 9.94A.370(2) provides that

> [i]n determining any sentence, . . . [f]acts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(c), (d), and (e).[4]

Thus, the question we address is whether the aggravating factors of multiple injuries and deliberate cruelty resulted from Mr. Worl's malicious harassment of Mr. Hill or, in the alternative, from the attempted second degree murder.

---

[4]RCW 9.94A.390(2)(c) applies to convictions for a major economic offense. Subsection (2)(d) of the statute applies to convictions for a major violation of the Uniform Controlled Substances Act, RCW 69.50. Former RCW 9.94A.390(2)(e) (now (f)) applies when the current offense is part of an ongoing pattern of sexual abuse. These exceptions are inapplicable in the instant case.

In *Worl*, we noted

> the original conduct reflected Mr. Worl intended to harass Mr. Hill as evidenced by his language. The crime of malicious harassment was complete when Mr. Worl assaulted Mr. Hill when he exited his car. The repeated slashing evidenced more than an intent to harass by causing physical injury, but evidenced an intent to kill Mr. Hill.

*Worl*, at 451. We adhere to our earlier ruling. The malicious harassment offense was complete when Mr. Hill exited his vehicle.

The factors used by the court to enhance the sentence, multiple injuries and deliberate cruelty, all relate to the savage and repeated attack on Mr. Hill which the jury found rose to the level of an attempted second degree murder. In sentencing Mr. Worl, the court referred to the numerous wounds Mr. Hill suffered and the persistence of the attack. The two factors on which the sentencing court relied to justify the exceptional sentence related to the charge of attempted murder, not Mr. Worl's malicious harassment of Mr. Hill. Accordingly, the court erred in using these aggravating factors to enhance the malicious harassment charge. *State v. Woody*, 48 Wn. App. 772, 779, 742 P.2d 133 (1987) (real facts that establish elements of additional crimes cannot be used to go outside the presumptive range), *review denied*, 110 Wn.2d 1006 (1988); *see also State v. Stark*, 66 Wn. App. 423, 436 n.3, 832 P.2d 109 (1992); David Boerner, *Sentencing in Washington* 9-49 to 9-50 (1985).

In sum, Mr. Worl's conviction of malicious harassment is affirmed. The sentence for that conviction is reversed and the case remanded for resentencing within the standard range.

MUNSON and SCHULTHEIS, JJ., concur.

Review granted at 125 Wn. 2d 1014 (1995).